O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | CASE NO.: CV 99-00044 ABC (AJWx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING RECEIVER'S MOTION** |
| v. | ) | **FOR INSTRUCTIONS AND FOR ORDER** |
| | ) | **DETERMINING THAT RIGHT TO** |
| J.K. PUBLICATIONS, INC., etc., | ) | **DISTRIBUTION OF INTESTATE HEIR IS** |
| et al. | ) | **A RECEIVERSHIP ASSET** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

     Pending before the Court is a motion filed by Receiver Robb Evans
("Receiver") for instructions and a determination that Kenneth Taves's
("Taves") interest as an intestate heir is a receivership asset.  The
Court held a hearing on the motion on April 13, 2009.  Upon
consideration of the parties' submissions, the arguments of counsel,
and the case file, the Court hereby GRANTS the Receiver's motion and
provides instructions as follows.

                              **BACKGROUND**

     The motion pending before the Court arises from a complaint filed
by the FTC against Kenneth Taves and other Defendants, alleging that
they committed unfair and deceptive business practices in violation of
Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  The Court issued a

Preliminary Injunction Order on March 15, 1999.  (Docket # 101) ("PI Order").  In the PI Order, the Court appointed the Receiver as the permanent receiver "with full powers of an equity receiver, for all assets and financial records, including but not limited to funds [and] properties . . . that are (1) owned or controlled, directly or indirectly, by any Taves Defendant, in whole or in part . . . with directions and authority to . . . [c]ollect, marshal, and take custody, control and possession of all assets of the Taves Defendants."  PI Order at Section IX.  The PI Order defined the term "assets" as "all real and personal property," including "general intangibles."  PI Order.  The Court excluded from the receivership estate certain funds earned through employment after January 6, 1999.  PI Order at Section IX.  The Court also granted the Receiver only limited rights to take possession of and sell certain enumerated physical assets, such as residences and personal property in those residences.  Id.  Other than the employment funds and the enumerated physical assets, no other assets were excluded.

On April 7, 2000, the Court granted partial summary judgment finding Defendants (including Taves) liable for committing unfair business practices within the meaning of Section 5 of the FTC Act.  (See Docket # 381).  The Court conducted a trial on June 15-16, 2000, with respect to the amount of damages owed by Defendants and, on August 9, 2000, the Court adopted Findings of Fact and Conclusions of Law finding Defendants jointly and severally liable for $37,566,577.  (See Docket # 412).

On August 29, 2000, the Court entered its Final Order and Permanent Injunction.  (See Docket # 424) ("Final Order").  The Final Order provided that Taves "relinquish[ed] all right, title and

interest to . . . all assets subject to claims by the Receiver, or the receivership estate, or the Commission pursuant to . . . the Order of Preliminary Injunction previously entered in this case."  Final Order at Section VIII.  The Final Order authorized the Receiver to "continue to take all steps necessary or advisable to locate and liquidate all assets subject to the Order of Preliminary Injunction."  Final Order at Section XVI.  The Final Order further provided that the Receiver should "adjust, intervene in or become a party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary or advisable in order to collect, marshal, and take custody, control and possession of such funds, property and assets."  Final Order at Section XVII.

Several years after entry of the Final Order, on July 1, 2007, William Arnold Pann ("Pann") died intestate.  A probate case for the administration of Pann's estate was filed in Orange County Superior Court, Estate of William Arnold Pann, Case No. A244381 ("Probate Court").  See Caris Decl. ¶ 3.  Pann is Taves's uncle.  Upon becoming aware that Taves was listed as an intestate heir to the Pann estate, on December 21, 2007, the Receiver filed a notice with the Probate Court of its interest in Taves's assets.  Caris Decl. ¶ 4.  On March 18, 2008, Taves filed a disclaimer in the Probate Court seeking to disclaim his interest in the Pann estate.  Id.  On June 18, 2008, the Receiver filed a response, asserting that Taves's purported disclaimer was invalid because the receivership estate had exclusive rights and control over Taves's intestate interest.  See Caris Decl. Ex. 5.  The Probate Court has not made any determination as to whether Taves's disclaimer is valid.  Instead, the Receiver filed a request with the Probate Court that it defer adjudicating that issue until this Court

1  could determine whether Taves's disclaimer was invalid in light of the

2  pre-existing receivership estate.  See Caris Decl. Ex. 7.

3     The Receiver then filed the pending motion with this Court

4  seeking such a determination.  The Receiver contends that,

5  notwithstanding that disclaimers are generally allowed under

6  California law, Taves had no right or ability to disclaim his

7  intestate interest because that interest became an asset of the

8  receivership estate immediately upon Pann's death.  Non-parties

9  Maxwell and Sara Taves (hereinafter, "the Objectors") are Taves's

10 children.  As such, they would be entitled to receive Taves's share of

11 the Pann estate in the event that the disclaimer is found to be valid.

12 The Objectors specially appeared to oppose the Receiver's motion.

13                              **DISCUSSION**

14     The Objectors raise a variety of arguments in asserting that this

15 Court cannot find that Taves's disclaimer is invalid.  First, the

16 Objectors contend that the Court lacks jurisdiction to adjudicate the

17 matter pursuant to the "probate exception."  Second, the Objectors

18 contend that the Court lacks jurisdiction over them because they are

19 non-parties to this case.  Third, they contend that the intestate

20 interest is not part of the receivership estate because it is not an

21 asset traceable to Taves's illegal conduct.  And, finally, they

22 contend that Taves's disclaimer is valid and effectively transferred

23 his intestate interest to them.  The Court will address each of these

24 contentions in turn.

25     **A.   WHETHER THE PROBATE EXCEPTION BARS THE RECEIVER'S REQUEST.**

26     The Objectors challenge the Court's jurisdiction over the

27 Receiver's request, arguing that the Court is precluded from providing

28 the requested relief under the probate exception discussed in Marshall

                                    4

1  <u>v. Marshall</u>, 547 U.S. 293 (2006).  Opp'n at 13.  The probate exception

2  provides a limited exception to federal jurisdiction.  <u>See id.</u> at 310.

3  The boundaries of the exception were clarified in <u>Marshall</u>:

4           [W]hen one court is exercising <u>in rem</u> jurisdiction over a

5           <u>res</u>, a second court will not assume <u>in rem</u> jurisdiction over

6           the same <u>res</u>.  Thus, the probate exception reserves to state

7           probate courts the probate or annulment of a will and the

8           administration of a decedent's estate; it also precludes

9           federal courts from endeavoring to dispose of property that

10          is in the custody of a state probate court.

11 <u>Id.</u> at 311-12 (internal citations omitted).  The probate exception

12 "does not bar federal courts from adjudicating matters outside those

13 confines and otherwise within federal jurisdiction."  <u>Id.</u> at 312.  A

14 federal court "will not take jurisdiction if it should not; but it is

15 equally true, that it must take jurisdiction, if it should."  <u>Id.</u> at

16 298.

17      The Objectors attempt to fit this case within the probate

18 exception by asserting that the Receiver "seeks to recover the res-the

19 inheritance-from the probate court and to usurp the jurisdiction of

20 the probate court from its right to decree the rightful heirs."  Opp'n

21 at 15.  The Court finds this argument unpersuasive.  As the cases

22 relied upon by the Objectors make clear, a federal court "may exercise

23 its jurisdiction to adjudicate rights in . . . property [that is

24 subject to a state probate proceeding] where the final judgment does

25 not undertake to interfere with the state court's possession save to

26 the extent that the state court is bound by the judgment to recognize

27 the right adjudicated by the federal court."  <u>Marshall</u>, 541 U.S. at

28 310 (quoting <u>Markham v. Allen</u>, 326 U.S. 490, 494 (1945)).   Thus, a

federal court properly adjudicates rights regarding property that is the subject of a probate proceeding so long as the federal court does not order the transfer of any property belonging to the probate estate.  See In re Enron Corp., 351 B.R. 305, 310 (S.D.N.Y. 2006) ("Enron I"); In re Enron Corp., 357 B.R. 32, 36 and n.2 (S.D.N.Y. 2006) ("Enron II").  After the federal court adjudicates the property rights, the prevailing party can then seek enforcement of that judgment in the probate proceedings.  Enron I, 351 B.R. at 310; Enron II, 357 B.R. at 36.

That scenario appears to be exactly what the Court has before it.  The Receiver does not seek an order from this Court directing the payment of funds from the probate estate to the receivership estate.  Rather, in the event that the Court rules that the intestate interest is an asset within the receivership estate, the Receiver could seek to have that ruling recognized by the Probate Court.  See Reply at 7-8.  That is the same set of circumstances that has been found to be beyond the contours of the probate exception by other courts.  See Enron I, 351 B.R. at 310; Enron II, 357 B.R. at 36.  Having failed to present authority establishing that this matter falls within the probate exception, the Court rejects the Objectors' argument.

**B.   WHETHER THE OBJECTORS MUST BE NAMED AS PARTIES.**

The Objectors make another threshold challenge to the Court's jurisdiction, arguing that jurisdiction is lacking because they were not named defendants in this matter.  See Opp'n at 8, 11.[1]  The Ninth Circuit has held that district courts are not prohibited from using summary post-judgment proceedings to adjudicate the claims of non-

---

[1]  As a corollary, the Objectors assert that they did not receive proper service and the Court lacks personal jurisdiction over them.

1   parties as to property claimed by receivers.  See S.E.C. v. Wencke,

2   783 F.2d 829, 836 (9th Cir. 1986).  The Objectors assert that such

3   summary proceedings are improper here, however, relying on S.E.C. v.

4   Ross, 504 F.3d 1130 (9th Cir. 2007).

5       The Objectors' reliance on Ross is misplaced.  Ross grew out of a

6   Ponzi scheme in which Paul Rubera used his company, Alpha Telcom, to

7   bilk investors out of their money.  Id. at 1133.  Alpha Telcom's

8   business plan was to sell service contracts on pay phones.  Id.  As

9   part of that plan, Alpha Telcom employed hundreds of agents to sell

10  those service contracts.  Id. at 1134 n.2.  Upon finding violations of

11  the securities laws, the district court granted equitable relief

12  against Rubera that included disgorgement of nearly $4,000,000.  Id.

13  at 1134.  The SEC then filed a motion seeking to disgorge $21,000,000

14  in sales commissions from Alpha Telcom's sales agents, who were not

15  named in the action.  Id.  That claim for disgorgement was premised on

16  the SEC's contention that the agents' sales violated the securities

17  laws.  See id. at 1142.  Thus, Ross involved claims for disgorgement

18  based on the agents' own alleged securities violations.

19      That fact was critical in the Ninth Circuit's holding that the

20  agents were not "nominal defendants" who did not need to be named

21  parties and that employing summary proceedings against them was

22  therefore improper.  The Ninth Circuit held that employing summary

23  proceedings against these non-parties was improper "given that the

24  Receiver alleged that [the agents themselves] had violated the

25  securities  laws--and this is both the central allegation of the

26  Receiver's disgorgement motion and the basis of the district court's

27  order."  Id. at 1144.  Instead, "a party alleged to have violated the

28  Securities Act must be treated as any other defendant and afforded

process of law." Id. at 1142.  In reaching its conclusion, the Ninth Circuit distinguished cases involving only a non-party's assertion of ownership to property claimed by the receiver.  Id. (distinguishing cases that "require[] only an adjudication of ownership; [not] a determination that a non-party has violated the law"); see also id. at 1144 (distinguishing Wencke, 783 F.2d at 836).

The distinguishing feature present in Ross is not present here. There is no contention that the Objectors engaged in any wrongdoing. The Receiver's motion seeks a determination that Taves's intestate interest vested in the receivership estate upon Pann's death and could not be disclaimed by Taves.  The Objectors are claiming that they own that intestate interest.  Hence, this motion involves only an adjudication of ownership in the intestate interest.  Accordingly, Ross does not support the Objectors' position.

The Receiver is entitled to seek the requested relief through the pending motion.

**C.    WHETHER ONLY ASSETS TRACEABLE TO TAVES'S FRAUD OR THEFT ARE SUBJECT TO THE RECEIVERSHIP.**

The Objectors next argue that the intestate funds cannot be subject to the receivership estate because the funds are not traceable to Taves's illegal conduct.  See Opp'n at 12.[2]  The relief granted in this case was based on Section 13(b) of the FTC Act, which only explicitly authorizes injunctive relief.  15 U.S.C. § 53(b). Nonetheless, this Court has the "authority to grant any ancillary relief necessary to accomplish complete justice."  F.T.C. v. Pantron I

---

[2]  To the extent that the Objectors argue that the terms of the Court's Orders are not broad enough to include non-traceable assets, the Court rejects that argument.  See, e.g., PI Order at Section IX; Final Order Section VIII.B.2.

Corp., 33 F.3d 1088, 1102 (9th Cir. 1994) (quoting F.T.C. v. H. N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir. 1982)).  The Ninth Circuit has affirmed such ancillary relief as a broad asset freeze.  H. N. Singer, 668 F.2d at 1113.

The Objectors present no authority to support their position that a traceability requirement exists and the Court rejects it.  Most significantly, defendants are held jointly and severally liable under Section 13(b) of the FTC Act.  See, e.g., Conclusions of Law 4 (Docket # 412); F.T.C. v. Medicor LLC, 217 F. Supp. 2d 1048, 1058 (C.D. Cal. 2002).  "Because of joint and several liability, a defendant may be called upon to redress the harm to consumers in an amount far exceeding the value of assets currently held by that defendant and that are traceable to the illegal enterprise."  F.T.C. v. Windward Marketing, Ltd., No. 1:96-CV-615-FMH, at 5 (N.D. Ga. May 22, 1996) (attached as Reply Ex. 2).  The applicability of joint and several liability is entirely inconsistent with the proposition that traceability is required.  Moreover, adopting a traceability requirement would lead to absurd results.  "Under [that] approach, for example, a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from an order of disgorgement."  S.E.C. v. Banner Fund Int'l, 211 F.3d 602, 617 (D.C. Cir. 2000).[3]

Accordingly, the Receiver is not precluded from seeking the intestate funds even though those funds are not traceable to Taves's illegal conduct.

[3]  The Court notes that many courts faced with this issue in the securities context have held that there is no traceability requirement.  See S.E.C. v. Lauer, 445 F. Supp. 2d 1362, 1369-70 (S.D. Fla. 2006) (collecting cases).

**D.   WHETHER TAVES'S PURPORTED DISCLAIMER IS VALID.**

The Court now turns to the substantive crux of the dispute: whether Taves validly disclaimed his interest in the Pann estate.  The traditional common law rule is that an heir has no power to disclaim his intestate claim because he is vested automatically with the title of the property upon the death of the intestate decedent.  See, e.g., United States v. Irvine, 511 U.S. 224, 239 n.16 (1994).  But California (like many other states) allows an intestate heir to disclaim his interest, so long as he files the disclaimer within a reasonable time.  See Cal. Probate Code §§ 267, 275, 279.  When a valid disclaimer is filed, it relates back to the date of the intestate decedent's death and the disclaimant is deemed to have pre-deceased the intestate decedent.  Cal. Probate Code § 282.  As a result, a valid disclaimer has the "effect of canceling the transfer to the disclaimant ab initio and substituting a single transfer from the original donor to the beneficiary of the disclaimer." Irvine, 511 U.S. at 239.  "An important consequence of treating a disclaimer as an ab initio defeasance is that the disclaimant's creditors are barred from reaching the disclaimed property." Id. at 239-40.  Thus, if Taves's disclaimer was valid, his intestate interest would have passed to the Objectors and would not be an asset of the receivership estate.

The Final Order establishing the receivership estate was issued by this Court in 2000.  Taves filed his disclaimer in the Probate Court seeking to relinquish his intestate interest in 2008.  Based on that chronology, the Receiver asserts that Taves's disclaimer is invalid because it came after this Court created the receivership estate.  According to the Receiver, the intestate interest became an asset of the receivership estate upon Pann's death and Taves could not

10

1  disclaim it.   The Court agrees.

2       The Receiver and the Objectors both cite to opinions arising in

3  analogous contexts that the Court finds to be instructive.   In

4  particular, both parties rely extensively on In re Costas, 555 F.3d

5  790 (9th Cir. 2009), which arises in the bankruptcy context.[4]   In that

6  case, one of the debtors was the beneficiary of a trust created by her

7  father.   Id. at 791-92.   The debtor's father died on February 25,

8  2002, leaving her an interest of at least $34,800.   Id. at 792.   But

9  the debtor refused to accept it and, on November 7, 2002, executed a

10  disclaimer under Arizona law.   Id.   Less than a month later, on

11  December 3, 2002, the debtor filed a petition for relief under Chapter

12  7 of the Bankruptcy Code.   Id.   The trustee then sought to avoid the

13  disclaimer as a fraudulent conveyance.   Id.

14       The Ninth Circuit held that the disclaimer was valid and

15  effective.   Id. at 797.   The timing of the disclaimer was important to

16  the Ninth Circuit's analysis.   See id. at 795-96 (distinguishing Drye

17  v. United States, 528 U.S. 49 (1999)).   In particular, the Ninth

18  Circuit noted the generally recognized rule that property will be

19  included in a bankruptcy estate notwithstanding a post-petition

20  disclaimer because "the right to disclaim itself belongs to the estate

21  as of the time of filing."   Id. (citing inter alia In re Scott, 385

22  B.R. 709 (D. Neb. 2008)).   Thus, post-petition disclaimers are invalid

23  and ineffective.   The Objectors acknowledge this rule, Opp'n at 22,

24  but offer no explanation as to why it does not defeat their claim.

25       The Court finds the bankruptcy case law relied upon by the

26

27       [4]  For unknown reasons, the Objectors raise a claim that the
   Receiver ignores Costas.   But the Receiver relied extensively on

28  Costas in both the opening brief and reply.   See, e.g., Mot. at 7-8.

1  parties instructive.  The PI Order appointed the Receiver as the

2  permanent receiver over Taves's "assets," which include "general

3  intangibles."[5]  Taves's purported disclaimer came well after the Court

4  had created the receivership estate.  Thus, it was a post-receivership

5  disclaimer similar to those rejected in the bankruptcy context.

6  Accordingly, the intestate interest immediately became an asset of the

7  receivership estate at the time of Pann's death.  Taves had no right

8  or ability to disclaim the interest in the Pann estate because that

9  interest belonged to the receivership estate.  Thus, Taves's purported

10  disclaimer is invalid and ineffective.[6]

### DETERMINATION AND INSTRUCTIONS

12      The intestate interest in the estate of William Arnold Pann is an

13  asset of the receivership estate under the terms of the Court's PI

14  Order and Final Order.  The Receiver has the exclusive right to

15  possession, custody and control of the intestate interest and may

16  execute all documents in the name of Taves to liquidate and collect

17  the distribution on account of the intestate claim for the benefit of

18  the receivership estate.  The purported disclaimer by Taves in the

19  intestate interest is invalid and ineffective.  The Objectors acquired

---

21  [5]  "General intangibles" are defined to include "any personal
22  property" other than those fitting various defined categories of
   property.  See Cal. Com. Code § 9102(42).  This definition appears
   broad enough to include the intestate interest at issue.  The
23  Objectors, however, assert that there is a "dispute as to whether the
   receiver's characterization as a 'general intangible' applies to this
24  interest."  Opp'n at 24.  But they offer no actual argument as to why
   the intestate interest does not fall within that definition.  See id.
25  Given the broad definition of "general intangible," the Court finds
   the Objectors' ipse dixit argument unpersuasive.

27  [6]  In light of the Court's holding that the intestate interest
   was immediately owned by the receivership estate, the Court rejects
   the Objectors' argument that the Receiver's notice in the Probate
28  Court did not create a lien.

no interest in the Pann estate vis-a-vis Taves's invalid disclaimer.

    **IT IS SO ORDERED.**

**DATED:**    **April 13, 2009**

_____

        **AUDREY B. COLLINS**
**UNITED STATES DISTRICT CHIEF JUDGE**